**Tim HODGES, Denton County Clerk and Registrar of Voters, Appellant,**

v.

**Deborah THOMPSON and Robert Tidwell, Appellees.**

**No. 2–96–161–CV.**

Court of Appeals of Texas, Fort Worth.

Oct. 24, 1996.

---

Robert Schell, Joe Bridges, Assistant District Attorneys, Denton, for Appellant.

William E. Trantham, William Trantham & Associates, Farmers Branch, for Appellee.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## OPINION

RICHARDS, Justice.

Appellees-Relators Deborah Thompson and Robert Tidwell brought a petition for writ of mandamus in Denton County District Court to force Appellant–Respondent Tim Hodges, Denton County Clerk, to certify a petition for election to legalize the sale of beer and wine in Roanoke, Texas. With agreement from both sides, the case was tried before the bench. The trial court found in favor of Thompson and Tidwell. Hodges appeals from a judgment ordering that a peremptory writ of mandamus issue.

In two points of error, Hodges claims the trial court erred in issuing the writ of mandamus because: (1) he was barred from certifying that the petition contained the requisite number of signatures by Texas Alcoholic Beverage Code section 251.10; and (2) determination of sufficiency of the petition is a discretionary function for which mandamus should not issue absent a showing of clear abuse of discretion. We affirm in part and reverse in part.

### FACTS

Both sides agree to the basic facts of this case. In February 1996, the Denton County clerk's office provided Curtis Willet with a petition for a local option election to legalize the sale of beer and wine for off-premise consumption in Roanoke. The Clerk's Office

also provided Willet with a copy of Texas Alcoholic Beverage Code section 251.10 and a Petition Information Sheet. Willet instructed all signatories of the petition in the manner that section 251.10 required them to sign the petition. Thompson and Tidwell signed the petition. Willet timely returned the signed petition to the clerk's office within thirty days. The petition contained 286 signatures.

Hodges examined the petition in light of section 251.10 which provides as follows:

### § 251.10. Verification of Petition

(a) The registrar of voters of the county shall check the names of the signers of petitions and the voting precincts in which they reside to determine whether the signers of the petition were qualified voters of the county, justice precinct, or incorporated city or town at the time the petition was issued. The registrar shall certify to the commissioners court the number of qualified voters signing the petition.

(b) No signature may be counted, either by the registrar or commissioners court, where there is *reason to believe* that:

(1) it is not the actual signature of the purported signer;

(2) the voter registration certificate number is not correct;

(3) the voter registration certificate number is not in the actual handwriting of the signer;

(4) it is a duplication either of a name or of handwriting used in any other signature on the petition;

(5) the residence address of the signer is not correct or is not in the actual handwriting of the signer; or

(6) the name of the voter is not signed exactly as it appears on the official copy of the current list of registered voters for the voting year in which the petition is issued.

TEX. ALCO. BEV. CODE ANN. § 251.10 (Vernon 1995). Applying these requirements, Hodges found that only 203 of the 286 signatures were in compliance with section 251.10(b).

The Alcoholic Beverage Code requires the petition to show the certified signatures of thirty-five percent of the registered voters in a political subdivision before the commissioners court can order a local option election. TEX. ALCO. BEV. CODE ANN. § 251.11(1) (Vernon 1995). In this case, 210 certified signatures were required.

Because only 203 signatures met the statutory requirements of subsection (b), Hodges refused to certify the petition to the commissioners court. Thereafter, relators filed this suit asking the district court to issue a writ of mandamus to force Hodges to certify that the petition contained 210 signatures to the commissioners court. After a bench trial, the court found in favor of relators and issued the writ. The court found that section 251.10(a) is mandatory and *only* requires the registrar to find that a sufficient number of "qualified voters" signed the petition. The court found that section 251.10(b), on the other hand, is merely directory and thus subject to the mandatory requirements of section 251.10(a). The court noted that "were common sense to prevail over … subsection (b) and a fair and reasonable review of the petitions were allowed," Hodges would certify the petition. The court concluded that "the automatic application of the directory provisions of subsection (b) in this case is in contravention of the mandate of subsection (a) and is a clear abuse of discretion for which mandamus should issue."

Hodges timely perfected appeal to this court.

### ANALYSIS

■ We cannot find any case determining whether section 251.10(b) is mandatory or directory; therefore, this is a case of first impression. However, the Attorney General has specifically found that subsection (b) is mandatory. Op. Tex. Att'y Gen. No. JM–501 (1986).

■ In interpreting a statute, we must look to the intent of the legislature as expressed in the language of the statute. *Crimmins v. Lowry,* 691 S.W.2d 582, 584 (Tex.1985). Further, we must presume that all words chosen by the legislature were used for a purpose. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988) ("entire statute is intended to be effective"); *Industrial Acci-*

*dent Bd. v. Martinez,* 836 S.W.2d 330, 333 (Tex.App.—Houston [14th Dist.] 1992, no writ) (court must presume entire statute is intended to be effective).

We find that the trial court erred when it held that the provisions of section 251.10(b) were directory and not mandatory. We cannot find any authority that would allow us to read section 251.10(a) as mandatory and effectively ignore section 251.10(b) as merely directory. Rather, an objective reading of subsection (b) indicates that it is mandatory.

■ Subsection (b) provides *"[n]o* signature *may* be counted." TEX. ALCO. BEV. CODE ANN. § 251.10(b) (Vernon 1995) (emphasis added). The trial court focused on the word "may" in determining that subsection (b) was merely directive. We agree that the word "may" usually implies that the provision is directory and not mandatory. *In re Minnick,* 653 S.W.2d 503, 508 (Tex.App.—Amarillo 1983, no writ). But, the trial court chose to ignore the word "no" in interpreting subsection (b). In this case, the phrase "no signature may be counted" means signatures not in compliance with subsection (b) *may not* be counted. The phrase "may not" means "shall not" and is therefore mandatory. Op. Tex. Att'y Gen. No. JM–501 (1986); *Ryan v. Montgomery,* 396 Mich. 213, 240 N.W.2d 236, 238 (1976). Accordingly, we hold that section 251.10(b) is a mandatory provision.

■ Subsection (a) is also mandatory. The statute clearly requires the registrar to certify "the number of qualified voters signing the petition." Contrary to Hodges's position, we read subsection (a) to require him to certify *whatever* number of voters he can "count" under subsection (b) to the commissioners court. In other words, if there were only one qualified voter who signed the petition in accordance with subsection (b), Hodges would be required to certify to the com-

missioners court that one qualified voter signed the petition.

The trial court erred because it analyzed Thompson and Tidwell's petition for mandamus under the assumption that section 251.10(b) was directive. Therefore, Hodges's point of error one is sustained in part and overruled in part. To the extent that the trial court ordered Hodges to certify to the commissioners court the number of qualified voters who signed the petition in compliance with subsection (b), the court's judgment is affirmed. But, to the extent that the trial court ordered Hodges to certify to the commissioners court the number of *all* qualified voters who signed the petition, regardless of compliance with subsection (b), we reverse. This cause is remanded to the trial court for consideration not inconsistent with this opinion. Because we remand based on Hodges's first point of error, we do not reach the merits of his second point of error.[1]

---

1. At the hearing in the trial court, Thompson and Tidwell specifically stated that they were not asking that section 251.10 be found unconstitutional. But, on appeal, they argue that application of the requirements of section 251.10 violate the Texas Constitution because they limit the rights of voters to vote. TEX. CONST. art. VI, § 4; TEX. CONST. art. XVI, § 2. Thompson and Tidwell did not make the Attorney General a party to this action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(b) (Vernon 1986) (attorney general must be made a party in order to challenge constitutionality of state statute). However, because we find that the trial court misinterpreted section 251.10, we do not reach the issue of whether, when properly applied, section 251.10 is unconstitutional.